NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TONYA KNOWLES,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2019-1987

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-19-0047-W-1.

---

Decided: January 10, 2020

---

TONYA KNOWLES, Largo, FL, pro se.

KELLY A. KRYSTYNIAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, REGINALD THOMAS BLADES, JR., ROBERT EDWARD KIRSCHMAN, JR.

---

Before DYK, TARANTO, and CHEN, *Circuit Judges.*

PER CURIAM.

Pro se appellant Tonya Knowles appeals from a decision of the Merit Systems Protection Board (Board) denying Ms. Knowles's request for corrective action under the Whistleblower Protection Act (WPA). We *affirm*.

BACKGROUND

Ms. Knowles is currently employed by the Bay Pines Veterans Affairs Health Care System, a veterans' hospital operated by the Department of Veterans Affairs (agency) in Bay Pines, Florida. From 2016 to 2018, Ms. Knowles was subject to several personnel actions she believes were in retaliation for her protected disclosure in violation of the WPA. In 2017, Ms. Knowles filed a complaint with the Office of Special Counsel (OSC) alleging that Bay Pines employees were not properly storing patients' medical records and that she had been detailed, suspended, discriminated against, experienced a hostile work environment and received a proposed removal as reprisal for the allegation regarding the improper storage of medical records. Each personnel action is discussed below.

On December 30, 2016, the agency proposed to suspend Ms. Knowles from duty and pay for ten days based on three charges: (1) failure to safeguard confidential information, (2) negligence causing waste and delay, and (3) disruptive behavior. After Ms. Knowles gave oral and written replies, the agency's deciding official issued a final decision on March 10, 2017 sustaining the charges and mitigating the proposed ten-day suspension to seven days.

On January 10, 2017, the agency issued a memorandum stating that Ms. Knowles left protected health information and personally identifiable information concerning several patients unattended and unsecured on her desk. On February 7, 2017, the agency issued another memorandum finding that Ms. Knowles committed a privacy violation by leaving a pre-complaint form with her own name,

address, and social security number face-up in a tray by her work station.

On March 26, 2018, the agency again proposed to suspend Ms. Knowles from duty and pay, this time for fourteen days based on two charges: (1) failure to follow instructions and (2) disruptive behavior. After Ms. Knowles gave oral and written replies, the agency's deciding official issued a final decision on April 20, 2018, sustaining the charges and the proposed fourteen-day suspension.

On June 29, 2018, the agency proposed to remove Ms. Knowles from federal employment based on two charges: (1) failure to cooperate and (2) failure to safeguard confidential information. To date, the agency has not reached a decision regarding Ms. Knowles's proposed removal.

The OSC closed its inquiry as to whether the agency was improperly storing patients records on September 29, 2017 and determined that the agency had begun safeguarding documents in compliance with agency regulations. The OSC closed its inquiry into Ms. Knowles's claim of whistleblower retaliation on October 18, 2018. Ms. Knowles then filed an individual right of action with the Board on October 19, 2018, alleging that the agency's personnel actions against her violated the WPA because they were in retaliation for making a protected disclosure. Based on the testimony and evidence presented, the administrative judge found that Ms. Knowles had made at least one protected disclosure and had established that her disclosure was a contributing factor in the agency's personnel actions. But the administrative judge also found that the agency would have taken the same disciplinary actions notwithstanding Ms. Knowles's disclosure and therefore that corrective action was not warranted. The administrative judge's initial decision became the final decision of the Board. Ms. Knowles timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

DISCUSSION

Our standard of review is limited and requires this court to affirm a decision of the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence is "relevant evidence" that "a reasonable mind might accept as adequate to support a conclusion." *Ingram v. Dep't of the Army*, 623 Fed. Appx. 1000, 1003 (Fed. Cir. 2015).

The WPA prohibits an agency from taking a personnel action because of any whistleblowing "disclosure" or activity. 5 U.S.C. § 2302(b)(8)–(9). An employee who believes he has been subjected to illegal retaliation must prove by a preponderance of the evidence that he made a protected disclosure that contributed to the agency's action against him. *See Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). "If the employee establishes this *prima facie* case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Id.* at 1364 (quoting 5 U.S.C. § 1221(e)). If the agency does not show by clear and convincing evidence that it would have taken the same action absent the whistleblowing, the agency's personnel action must be set aside. *See Siler v. Envtl. Prot. Agency*, 908 F.3d 1291, 1298 (Fed. Cir. 2018).

In Ms. Knowles's case, the government does not dispute that agency officials issued personnel actions against her. The parties likewise agree that Ms. Knowles made protected disclosures. The question here is whether the Board properly found that the agency established "by clear and convincing evidence," that for each of the personnel actions taken between 2016 and 2018, "it would have taken the same personnel action in the absence of [a protected] disclosure." 5 U.S.C. § 1221(e)(2). This Court has outlined factors to consider to answer that question. *Carr v. Soc.*

*Sec. Amin.*,185 F.3d 1318, 1323 (Fed. Cir. 1999). Under *Carr*, the Board considers (1) "the strength of the agency's evidence in support of its personnel action;" (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision;" and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Id.* Here, substantial evidence supports the Board's findings with respect to the *Carr* factors and its ultimate determination that the agency would have implemented the personnel actions it did, or proposed to, even if Ms. Knowles had not made a protected disclosure.

## A. MARCH 2017: SEVEN DAY SUSPENSION

In December 2016, the agency proposed a ten-day suspension, which was mitigated to a seven-day suspension in March 2017. The charges against Ms. Knowles included: (1) failure to safeguard confidential information, (2) negligence causing waste and delay, and (3) disruptive behavior. Charge one was supported by four specifications, all of which detailed instances in which Ms. Knowles mishandled or lost confidential information. Charge two was supported by three specifications all of which relate to the free credit monitoring services the agency had to provide to veterans due to Ms. Knowles's mishandling of confidential information. Charge three was supported by three specifications, all of which discussed Ms. Knowles's disruptive behavior during work, including Ms. Knowles's language and actions in front of veterans.

With respect to the first *Carr* factor, substantial evidence supports the Board's findings that the agency met its burden of proving charges one and two. J.A. 11–12. For charge one, the record contained a handwritten note from a veteran stating that while he was sitting with Ms. Knowles and she was looking for his patient information, another veteran returned it to him. J.A. 11. Additionally,

this mishandling of information was also documented in a memorandum from 2016. *Id.* For charge two, the Board noted that Ms. Knowles did not deny that her actions required the agency to bear the expense of credit monitoring for veterans whose confidential information she had misplaced. J.A. 12. The Board declined to consider charge three, because the agency provided little supporting testimony and evidence. *Id.* The Board reasonably found the evidence in supporting charges one and two sufficient to sustain those charges and justify the imposed seven-day suspension. *Id.*

With respect to the second *Carr* factor, the Board properly found no retaliatory motive by the three agency officials involved in recommending, proposing, and deciding Ms. Knowles's suspension. J.A. 12–14. Ms. Knowles argues that for all three agency officials her "criticisms reflected on both of their capacities as management officials and employees, which is sufficient to establish a substantial retaliatory motive." The Board is in the best position to assess the credibility of witnesses. *Haebe v. DOJ*, 288 F.3d 1288, 1300 (Fed. Cir. 2002). We find that the Board appropriately made credibility determinations as to each testifying official and its "find[ing of] no evidence in the record" for retaliatory motivation for these officials supported by substantial evidence. J.A. 13, 14.

With respect to the third *Carr* factor, the Board found "neither party presented meaningful evidence regarding the extent to which the agency may take similar actions against employees who did not engage in protected activity but who are otherwise similarly situated to the appellant." J.A. 14. Thus, the Board concluded that "there is no relevant comparator evidence." *Id.* Ms. Knowles argues that the agency did not take similar actions against a different whistleblower employee, Dr. Roula Baroudi, who was accused of photographing patient records. Dr. Baroudi, however, was not a similarly situated non-whistleblower, but rather an allegedly similarly situated whistleblower.

Therefore, the Board appropriately did not consider this information. *Siler v. Envtl. Prot. Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018) ("Though the agency's treatment of other whistleblowers may illuminate any motive to retaliate under *Carr* factor 2, it does not show the agency's treatment of non-whistleblower employees accused of similar conduct, the precise inquiry considered under *Carr* factor 3."). Based on the record, substantial evidence supports the Board's decision that the agency properly established by clear and convincing evidence that it would have taken the same personnel action even absent Ms. Knowles's protected disclosure.

## B. 2017 SECURITY VIOLATIONS

In 2017, Ms. Knowles was informed that she had violated agency rules related to safeguarding printed and electronic individually identifiable privacy-protected information. The agency issued two memorandums, the first from the Information Security Officer (ISO) and the second from the Assistant Chief of Health Information Management (ACHIM).

As to the first *Carr* factor, the Board found strong evidence supporting the violations, and substantial evidence supports its finding. J.A. 15, 17. The first memorandum from the agency's ISO on January 10, 2017, detailed that Ms. Knowles had left patient records unattended or unsecured on her desk. J.A. 14–15. The Board found that Ms. Knowles did not deny leaving the information unattended and unsecured on her desk. J.A. 15. The second memorandum from February 7, 2017 indicated Ms. Knowles left a pre-complaint form with Ms. Knowles's full name, address, and social security number face-up in the top tray at a work station. J.A. 16. Again, Ms. Knowles did not deny the allegation. J.A. 17.

As to the second *Carr* factor, substantial evidence supports the Board's finding that no evidence existed on the part of the two agency officials to retaliate against Ms.

Knowles. The ISO was unaware of Ms. Knowles's protected disclosure when it issued the January 2017 memorandum. J.A. 15. Nor was there any evidence in the record as to whether the ACHIM, the author of the second memorandum, knew about Ms. Knowles's protected disclosure. J.A. 17.

Neither Ms. Knowles nor the government presented evidence as to a similarly situated non-whistleblower. Therefore, the Board was free to find the personnel action lawful under *Carr* factors one and two. *Sutton v. Dep't of Justice*, 94 M.S.P.R 4, 12–13 (2003) (finding that whistleblower was lawfully removed based on the evidence under *Carr* factors one and two, where the record contained no evidence of action taken against similarly situated non-whistleblowers); *see also McCarthy v. Int'l Boundary & Water Comm.: U.S. & Mexico*, 116 M.S.P.R. 594, 626 (2011) (concluding that "the third Carr factor is not a significant factor for the Board's analysis in the instant appeal" in the absence of evidence showing that the agency took similar actions against similarly situated non-whistleblowers).[1] Thus, the Board did not err in holding that the agency properly established by clear and convincing evidence that it would have taken the same personnel action even absent Ms. Knowles's protected disclosure.

C.  MARCH 2018: FOURTEEN DAY SUSPENSION

In March 2018, the agency proposed to suspend Ms. Knowles for fourteen days without pay based on two charges, "failure to follow instructions" and "disruptive behavior." With respect to the first *Carr* factor, substantial evidence supports the Board's finding that the record evidence supports the validity of the charges. J.A. 19. The

---

[1]    To the extent that Ms. Knowles is presenting the same evidence with respect to Dr. Baroudi, see the explanation in part A, *supra*.

record evidence contained the March 26, 2018 suspension proposal with handwritten notes by Ms. Knowles. *Id.* None of Ms. Knowles's notes denied the allegations, nor did Ms. Knowles offer testimony about the underlying conduct, as to either charge. *Id.* Moreover, as to the disruptive behavior charge, the record contained the email sent by Ms. Knowles to Ms. Royer, accusing Ms. Royer of altering an email originally drafted by Ms. Knowles. J.A. 18. Additionally, the Board properly credited Ms. Royer's testimony that she feared Ms. Knowles would damage her career and she therefore raised the allegation with her supervisor. J.A. 21.

As to the second *Carr* factor, the Board reasonably found no evidence that the proposing official or the deciding official suffered negative consequences as a result of Ms. Knowles's protected disclosure nor other evidence suggesting the disclosure motivated their decisions. J.A. 21–22. Ms. Knowles argues that the proposing officer was placed on a "Performance Improvement Plan" (Plan) that "focused on areas that the Business Office Service Leadership Team was underperforming in." To the extent Ms. Knowles argues that participation in the Plan was a negative consequence of her disclosures, there is no evidence in the record supporting this claim. And, as explained above, we find that the Board made appropriate credibility determinations in finding no evidence of a retaliatory motive.

With respect to the third *Carr* factor, we agree with the Board that neither Ms. Knowles nor the government presented evidence as to a similarly situated non-whistleblower and therefore the Board appropriately only considered *Carr* factors one and two.[2] Thus, the Board did not err in holding that the agency properly established by

---

[2]     To the extent that Ms. Knowles is presenting the same evidence with respect to Dr. Baroudi, see the explanation in part A, *supra.*

clear and convincing evidence that it would have taken the same personnel action even absent Ms. Knowles's protected disclosure.

### D.   JUNE 2018: PROPOSED REMOVAL

In June 2018, the agency proposed to remove Ms. Knowles from federal employment based on two charges. The first charge was "failure to cooperate" and was supported by two specifications which both relate to Ms. Knowles's failure to address questions and issues from the agency's Privacy Office. The second charge was "failure to safeguard confidential information." The second charge was supported by eleven specifications alleging that Ms. Knowles sent confidential veteran information to her personal email address.

With respect to the first *Carr* factor, the Board's findings of strong evidence to support both charges are amply supported by the evidence. The record contains a copy of the Privacy Office's confirmation memorandum, listing all of the steps Ms. Knowles should take with respect to the confidential information she sent to her personal email address, which Ms. Knowles did not sign. J.A. 127. The record in front of the Board also contained copies of several email messages containing the confidential information Ms. Knowles sent to her personal email account. J.A. 27. Ms. Knowles did not deny the facts alleged in the specifications. *Id.*

As to the second *Carr* factor, the Board found no evidence in the record that the officer proposing the removal suffered negative consequences as a result of Ms. Knowles's disclosure nor any other evidence suggesting that such a disclosure motivated her to issue the notice of removal. J.A. 27–28. For the reasons provided earlier, we find that the Board made appropriate credibility determinations and substantial evidence supports the Board's decision. Because Ms. Knowles's arguments and the Board's finding as to the third *Carr* factor are no different than what was

presented for the other personnel actions discussed above, we affirm the Board's findings here as well.

We have considered Ms. Knowles's remaining arguments and find them unpersuasive.

CONCLUSION

For the foregoing reasons, the decision of the Board is *affirmed*.

**AFFIRMED**

COSTS

No Costs.